CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 6 2005

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 7:05CR00007 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JULIUS CHRISTOPHER CLAYTOR, | ) | By: Hon. James C. Turk |
| Defendant. | ) | Senior United States District Judge |

This case is before the court on a motion for new trial filed by the defendant, Julius Christopher Claytor ("Claytor").[1] (Dkt. No. 47) Claytor argues that the government did not present sufficient evidence for the jury to find that he possessed a handgun in furtherance of a drug trafficking crime. Additionally, at oral argument, the defendant raised a *Batson* issue as a separate basis for moving for a new trial. The parties have briefed the issues, and the Court heard oral argument on July 25, 2005. Thus, the matter is now ripe for decision. For the following reasons, the Court denies the defendant's motion for a new trial and the motion for acquittal.[2]

I

Claytor was found guilty in a two day jury trial on all three counts of his second

---

[1] The defendant renewed his motion for acquittal at oral argument. The Court took his motion for acquittal under advisement at the close of the prosecution's case and again at the close of the defendant's case. Because the Court never ruled on this motion before the jury returned its verdict, the motion is still ripe for decision. *See* FED. R. CRIM. P. 29(c).

[2] A motion for a new trial is an easier standard for a criminal defendant to meet than a motion for acquittal because in a motion for acquittal the Court must construe facts in the light most favorable to the government. *See U.S. v. Schallom*, 998 F.2d 196 (4th Cir. 1993). Because the Court denies the motion for a new trial, *a fortioti* the Court must also deny the motion for acquittal.

1

superceding indictment (Dkt. No. 27): possession of cocaine with intent to distribute, in violation of 18 U.S.C. § 841 (Count I); possession of a handgun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count II); and possession of a gun by a felon, in violation of 18 U.S.C. § 922(g) (Count III).

The government learned of these activities after Claytor's girlfriend, Monique Preston ("Preston"), accidently shot Claytor in the head on June 27, 2004.[3] In the early afternoon of that day, Preston called Claytor to alert him to an attempted burglary at her apartment. Although Claytor did not believe Preston when she called, he decided to leave his wife's company and go to her apartment to investigate.

When Claytor arrived at the apartment, Preston was upset and waiving a .40 caliber Glock pistol. He calmed her down, though, by investigating the attempted break-in. Eventually, he convinced her to put the gun away. As Preston attempted to put the gun in its box, however, she accidently pulled the trigger, sending a bullet through an ironing board, a wall, and a flat-screen television before landing in Claytor's temple.

Preston drove Claytor to the hospital to receive medical attention and at some point also called 911 to report the shooting. As part of their investigation, the police went to both Preston's apartment and the hospital. Because the police could not locate the gun at the apartment, an officer at the apartment requested another officer at the hospital search Claytor's pants to see if the weapon was there. When the officer entered Claytor's hospital room, he noticed the defendant's pants lying on a trash-can lid. In searching for the gun, however, the police officer discovered about 28 grams of cocaine in a baggie and about $1800 in cash.

---

[3]Claytor survived, largely because the bullet never entered his brain.

2

At trial, Claytor claimed that the pants were Preston's and he had put them on only after being shot and had no idea what was in them. He also claimed that the gun was Preston's. Thus, he denied possessing the drugs, the gun, or the gun in furtherance of a drug trafficking crime.

On direct examination, Preston attempted to walk a line between supporting Claytor's story and avoiding personal responsibility for the money, drugs, or gun. She admitted that Claytor stayed overnight at her apartment on occasion and kept personal possessions there. She then tried to maintain that she bought the gun to protect her children, but eventually admitted that Claytor asked her to buy the gun so that he could protect the drugs and money he kept in her apartment.[4] She also admitted that he gave her the money to buy the gun, and that she had to buy it because she, unlike the defendant, was not a convicted felon. She also tried to maintain that she did not know that Claytor was dealing drugs. She claimed that his money came from him selling his car, not from drug activity. She did admit, however, that neither had a job around the time of the shooting. Finally, Preston denied that the scale, bullets, or bullet magazine that were found in the apartment were hers.

On cross-examination, however, she attempted to help Claytor while still protecting her own interests. She stated that Claytor's name was not on the lease, and he did not spend every night at her apartment. She also explained that she had brandished the gun a number of times to Claytor's other paramours when Claytor was not present. She also said that she lived in a dangerous community, but that no other mothers that she knew of carried a gun. She also claimed not to know about the scale in her bedroom because she was too busy raising her

---

[4] Many of Preston's admissions came in the form of impeachment, where the government used her grand jury testimony to elicit essential facts. Although she claimed not to remember saying certain things in her grand jury testimony, she did not suggest that the transcript was inaccurate or her testimony there was untruthful.

3

children to go through Claytor's belongings. She did testify, however, that she knew Claytor kept a large amount of money in her apartment and that she had permission to use it whenever she needed some.

## II

A defendant may move for a new trial based on the interest of justice, but a court should grant such a motion only in exceptional circumstances. *United States v. Arrington*, 757 F.2d 1484, 1485-86 (4th Cir. 1985). Additionally, in deciding a motion for a new trial – unlike in a motion for acquittal – the district court may evaluate the credibility of the witnesses. *Id.* at 1485. When a defendant bases his motion for a new trial on the weight of the evidence, a district court should grant it only when the evidence weighs heavily against the verdict. *U.S. v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997).

Here, Preston's testimony gave the jury more than sufficient evidence to conclude that Claytor constructively possessed a handgun in furtherance of a drug trafficking crime. First, he both asked her to buy the gun and gave her the money to do it. Second, he kept the gun at her apartment in the same room as where drug distribution paraphernalia was kept. Finally, a jury could have concluded she knew he was a drug dealer. Simply put, it does not take a great leap for the jury to conclude that a drug dealer who paid for a gun and kept it in the same location as his drugs possessed it with intent to further a drug trafficking crime.

Claytor also suggested during oral argument that he should receive a new trial because the prosecution racially discriminated against him when it struck the only two African-American members of the jury venire. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court said the Equal Protection Clause prohibits a prosecutor from challenging a potential juror solely on

4

account of her race or on the assumption that African-American jurors as a group will be unable impartially to consider the government's case against a African-American defendant. *Id.* at 89.

The Court then created a three-part test for a defendant to establish a *prima facie* case of discrimination by the prosecutor. Under this test, the defendant must show: (1) he is a member of a distinct racial group; (2) the prosecutor has used the challenges to remove from the venire members of the defendant's race; and (3) other facts and circumstances surrounding the proceeding raise an inference that the prosecutor discriminated in his or her selection of the jury pool. *Id.* at 96-97. Once the defendant establishes a *prima facie* case, the burden then shifts to the prosecution to advance a non-discriminatory reason for the exercise of the peremptory challenges. *Id.* at 97. The trial court then must determine whether the defendant has proven intentional discrimination. *Id.*

Here, Claytor satisfies the first two prongs of the *prima facie* test, but fails the third. He offers no evidence – other than the fact of its occurrence – to raise an inference that race motivated the prosecution's decision to strike the two members of the jury pool who were also African-American. For example, he offers no evidence that the prosecution treated African-American veniremen differently during the voir dire.[5] Rather, during voir dire, the prosecutor asked the same types of questions to all prospective jurors. Because no other facts and circumstances surrounding the proceeding raised an inference that the prosecutor discriminated in his or her selection of the jury pool, the Court finds that Claytor has not proven a *prima facie*

---

[5] Recently, the Supreme Court found that a Texas prosecutor's actions met this standard. *Miller-El v. Dretke*, ___ U.S. ___, 125 S. Ct. 2317 (2005). In *Miller-El*, the prosecutor shuffled the jury venire to reduce the number of potential jurors who shared the same race as the defendant, and used answers to skewed questions posed only to those potential jurors of the same racial group as the defendant as a basis to strike those jurors. *Id.*

5

case of discrimination.

Even if the Court were to assume that Claytor had met the *prima facie* test, however, he has not shown intentional discrimination. When challenged at trial, the prosecutor stated the race-neutral reasons he struck both African-American members of the jury venire. The first person he struck was an African-American woman who mentioned during voir dire that her son had been convicted of a drug crime. The prosecutor said that this fact made him concerned that she would be too sympathetic to the defendant. The prosecutor also stated that he struck the African-American male because he wore an earring in each ear and because he spoke with a stutter. The prosecutor explained that the earrings suggested to him that the prospective juror had made a life-style choice that was not consistent with mainstream society. He also said that he struck the prospective juror because he thought the stutter would make deliberations too difficult. These facts simply do not convince the Court that the prosecutor engaged in intentional discrimination.

Because Claytor has not established that the evidence weighed heavily against the conclusion that he constructively possessed a handgun in furtherance of a drug trafficking crime, or that he was the victim of racial discrimination, the Court denies his motion for acquittal, and motion for a new trial.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to counsel of record for both the plaintiff the defendant.

ENTER: This 26th day of July, 2005.

/s/ James C. Turk
Senior United States District Judge

6

Case 7:05-cr-00007-JCT-RSB   Document 51   Filed 07/26/05   Page 6 of 6   Pageid#: 119