CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 1 2 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| JULIUS CHRISTOPHER CLAYTOR, | ) | **Criminal No. 7:05CR00007** |
| Petitioner, | ) | |
| | ) | **2255 MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **By: Hon. James C. Turk** |
| Respondent. | ) | **Senior United States District Judge** |

Julius Claytor, a federal inmate proceeding pro se, brings this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Claytor claims that his counsel was ineffective in a number of respects, and asserts other constitutional violations relating to his conviction and sentence. Respondent filed a motion to dismiss and Claytor an opposition brief, making the matter ripe for disposition. Because both parties presented materials outside of the pleadings for consideration, the court will treat the United States' motion as one for summary judgment. Upon review of the parties' submissions and the case record, the court finds that the United States' motion for summary judgment must be granted, and Claytor's motion for § 2255 relief must be denied.

## I. Background and Procedural History

On May 26, 2005, Claytor was charged in a three-count Superseding Indictment: possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841 (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Three). On June 7, 2005, this court denied Claytor's motion to suppress evidence found in pants removed from Claytor by hospital personnel while treating him for a

1

gunshot wound.[1]  The next day, a jury found Claytor guilty on all counts.

During the two-day trial, Claytor made a motion for judgment of acquittal on all counts, which the court denied with respect to Counts One and Three, but took under advisement with respect to Count Two.  Claytor then filed a motion for a new trial on June 23, 2005, arguing that the government failed to present sufficient evidence for a reasonable jury to find Claytor guilty of Count Two.  At oral argument on this motion, Claytor additionally claimed that a new trial was necessary because the United States struck the only two black members of the jury venire, in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  The court denied the judgment of acquittal and motion for new trial on July 26, 2005.

Claytor then filed a second motion for a new trial on September 20, 2005.  Attached to this motion was a sworn affidavit from Monique Preston, a key witness for the government, in which Preston contradicted many statements she had made under oath pertaining to Claytor's conduct.  The court held a hearing on September 26, 2005 and orally denied Claytor's motion. That same day, the court sentenced Claytor to 240 months in prison.[2]

On October 5, 2005, Claytor noted a direct appeal and raised four issues:  (1) that the drugs and money found in his pants should have been suppressed; (2) the claimed Batson

---

[1]     The charges against Claytor flowed from an unfortunate accident.  On June 27, 2004, Claytor was accidentally shot in the temple by his girlfriend Monique Preston while at Preston's apartment.  Preston drove Claytor to the hospital, where the medical staff removed Claytor's clothing to check for additional injuries.  A police officer soon arrived at the hospital to investigate the shooting.  He searched through the sweat pants Claytor had been wearing (which were lying on a trash-can lid in Claytor's hospital room) in an effort to find an ID, as well as the gun (which had not been located at the apartment, and was in fact never recovered).  Inside the pants, the officer discovered almost 28 grams of cocaine, along with $1,800 in cash.

[2]     Claytor received 120 months for Count One and 240 months for each of Counts Two and Three, all terms to run concurrently.  In imposing this 240-month term of incarceration, the court departed downward by 120 months from Claytor's minimum sentence as calculated by the advisory sentencing guidelines.

2

violation; (3) that this court erred in denying his motion for judgment of acquittal and first motion for a new trial; and (4) that this court erred in denying his second motion for a new trial. On December 5, 2006, the United States Court of Appeals for the Fourth Circuit affirmed Claytor's convictions and sentence.[3]  Claytor then filed a petition for writ of certiorari with the United States Supreme Court, which was denied on April 23, 2007.

On April 24, 2008, Claytor filed this § 2255 action, formally listing five grounds for relief: (1) ineffective assistance of counsel for failing to timely investigate and file a motion to dismiss the indictment; (2) ineffective assistance of counsel for failing to cite available authority in support of the motion to suppress evidence; (3) ineffective assistance of counsel due to multiple errors during the pretrial, trial, sentencing, and direct appeal processes; (4) denial of due process; and (5) that his conviction and sentence violate the First, Fourth, Sixth, and Eight Amendments to the United States Constitution.  In support of this motion, Claytor submitted a number of exhibits and extensive argument.  The United States' motion for summary judgment included a detailed affidavit from Claytor's counsel during the pretrial, trial, sentencing, and appeal proceedings.  Claytor's opposition brief included documents from the Drug Enforcement Agency ("DEA") investigation that began the night of the accidental shooting.[4]

---

[3]     On October 10, 2006 (while his appeal was pending), Claytor made a third motion (filed pro se) for a new trial pursuant to Federal Rule of Criminal Procedure 33.  Claytor argued that the perjury convictions of two key government witnesses—Preston and Kenya Claytor (his wife at the time)—constituted "newly discovered evidence" and that the interests of justice mandated a new trial.  This court denied Claytor's motion on the ground that the perjury convictions failed to satisfy three parts of the applicable five-prong test, as stated in United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989).  (See Dkt. Nos. 95, 96).

[4]     For reasons explained infra, the court finds that an evidentiary hearing is unnecessary because "the motion and the files and records of the case conclusively show that [Claytor] is entitled to no relief."  28 U.S.C. § 2255(b).

Case 7:05-cr-00007-JCT-RSB   Document 121   Filed 02/12/09   Page 3 of 22   Pageid#: 628

## II. Standards of Review

### A. Motion for Summary Judgment

The court must treat the United States' motion as one for summary judgment, as both parties submitted materials outside of the pleadings. Fed. R. Civ. Pro. 12(d).[5] In a motion for summary judgment, the court views the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### B. Section 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. See United States v. Frady, 456 U.S. 152, 164 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Under § 2255, a prisoner in federal custody may challenge his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

---

[5]     The parties received reasonable and explicit notice of the court's intention to convert the United States' motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on July 28, 2008, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." (Dkt. No. 118).

4

## C. Ineffective Assistance of Counsel

In general, to evaluate Claytor's claims of ineffective assistance of counsel, the court relies on the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. Id. at 687.

To satisfy the first prong, a habeas petitioner must show that his counsel's performance was deficient. Id. "Deficient performance" is not merely below average; rather, counsel's actions must fall below objective standards of reasonableness. Id. at 687-88. In assessing an attorney's performance, judicial scrutiny must be "highly deferential" to tactical decisions, and the court must filter from its analysis the "distorting effects of hindsight." Id. at 689. The first prong of Strickland necessitates a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Under the second Strickland prong, a petitioner must show that prejudice resulted from counsel's deficient performance. Id. at 692. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. at 694.

Failure to satisfy either prong is fatal to a petitioner's claim, so "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. Thus, "[i]f [a] defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Strickland, 466 U.S. at 697).

5

## III. Analysis

### A. Ground One—Pretrial Motion to Dismiss

Claytor's first ground for habeas relief is that his counsel was ineffective in the pretrial stages for failing to investigate and then move to dismiss the indictment against him. Claytor claims an investigation by counsel would have revealed that Kenya Claytor (hereinafter "Kenya") perjured herself at the grand jury, and that the prosecutor had "essentially put words into the mouth of [Preston] at the Grand Jury." (§ 2255 Mot. at 15, Dkt. No. 108). Because of these alleged errors, Claytor argues that there is a reasonable probability that the indictment would have been dismissed against him due to prosecutorial misconduct. The court disagrees.

Claytor presents no evidence of prosecutorial misconduct. Though Kenya was convicted of perjury for some statements made before the grand jury, petitioner has made no showing— beyond his own bare allegations—that the government knew at the time that her statements were false. To the contrary, the grand jury transcript reveals that Kenya was informed that she was under oath and that if she knowingly answered a question falsely could face perjury charges. (See Jun. 7, 2005 Trial Tr. at 181). Preston was similarly informed before she gave her grand jury testimony. Preston's grand jury transcript also reflects that though the United States could not offer Preston blanket immunity, it had been explained to her that she was not the target of the investigation. Preston herself later admitted that she was not threatened by the prosecutor at the grand jury, and was explicitly told to tell the truth or potentially face perjury charges. (Id. at 76-77, 102-05; Sep. 26, 2005 Sent. Tr. at 7-8, 11-13, 22-23). In addition, the court has reviewed the grand jury transcript and finds that most of Preston's testimony was in response to open, not leading, questions by the prosecutor. Though portions of Preston's testimony affirmed leading questions by the prosecutor, the rules of evidence do not apply in grand jury proceedings, Fed. R.

6

Evid. 1101(d)(2). Leading questions in grand jury proceedings are common and do not constitute prosecutorial misconduct. Moreover, if a case proceeds to trial (as Claytor's did) and the defendant is found guilty, "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986).

For the above reasons, the court holds that failure to file a pretrial motion to dismiss the indictment does not constitute deficient performance by Claytor's counsel, nor did Claytor suffer any prejudice under Strickland.[6]

### B. Ground Two—Motion to Suppress

Claytor next contends that counsel's failure to cite any authority in favor of the motion to suppress evidence found in the pants at the hospital constitutes ineffective assistance.[7] In support of this argument, Claytor presents a few out-of-jurisdiction cases available at the time that he claims would have changed the court's ruling. Without deciding whether counsel's failure to cite any of the decisions provided constitutes deficient performance, the court holds that Claytor suffered no Strickland prejudice.[8]

The court denied the motion to suppress on two grounds. First, because Claytor himself

---

[6]    Claytor's claim that his counsel was ineffective at trial for failing to investigate Preston's and Kenya's grand jury statements is discussed infra at Part III(C)(1).

[7]    At the suppression hearing, Claytor's counsel was asked whether he had "any authority dealing with something like this," to which he responded in the negative. (Jun. 7, 2005 Mot. to Sup. Tr. at 24, Ex. 2 to Dkt. No. 117).

[8]    In so doing, the court rejects the government's argument that Claytor is barred from asserting this ineffective assistance claim in a habeas motion because he had previously appealed whether the search complied with the Fourth Amendment. Though the legal issues largely overlap with regard to prejudice, Claytor here is asserting a distinct Sixth Amendment constitutional claim.

7

Case 7:05-cr-00007-JCT-RSB   Document 121   Filed 02/12/09   Page 7 of 22   Pageid#: 632

testified that the pants he wore to the hospital were not his,[9] he did not have standing (i.e. a reasonable expectation of privacy) to challenge the pants' search. (Jun. 7, 2005 Mot. to Sup. Tr. at 28). Second, even assuming that the search violated Claytor's Fourth Amendment rights, the police would have inevitably discovered the evidence. (Id.).[10]

Claytor does not claim that his authority directly challenges either of the court's two holdings. Instead, he contends that "it is not the search that is at issue but the seizure[. T]herefore it is to be measured by whether the seizure interfered with the defendant['s] constitutionally protected possessory interest." (Opp. Br. at 5, Dkt. No. 119). Thus, Claytor concedes the lawfulness of the search and consequential discovery of the cocaine and money, but objects to their seizure without a warrant. However, this argument fails because an individual can have "no possessory interest in . . . contraband." United States v. Greenwood, 246 Fed. App'x 174, 176 n.1 (4th Cir. 2007). See also United States v. Reed, 141 F.3d 644, 650 (6th Cir. 1998) ("[T]here is no possessory interest in contraband."). And although only the cocaine is "contraband," warrantless seizure of the $1,800 found in conjunction with the cocaine also passes constitutional muster under the "plain view" exception. See Minnesota. v. Dickerson, 508 U.S. 366, 375( 1993) ("[I]f police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.").

The seizure cases Claytor relies upon do not hold to the contrary. In none did the defendant fail to claim ownership over the items seized. Further, in each case law enforcement

---

[9] Claytor testified that he put on the sweat pants only after he was shot, and that they were not his, speculating that Preston was the true owner. (Jun. 7, 2005 Mot. to Sup. Tr. at 4, 7-8).

[10] On appeal, the Fourth Circuit affirmed this decision, though it only discussed the second ground: "we conclude that the evidence would have been inevitably discovered by lawful means." (Dkt. No. 97 at 2 (citing Nix v. Williams, 467 U.S. 431, 444 (1984))).

authorities seized articles of clothing or other everyday items at a hospital without a warrant. The incriminating character of these items was not immediately apparent, but revealed only after forensic testing and/or together with other evidence.[11] In stark contrast, seized from the sweat pants Claytor wore to the hospital were illegal drugs together with a large sum of cash.[12]

For these reasons, the court holds that Claytor has failed to establish Strickland prejudice with respect to his claim that counsel was ineffective by not researching and investigating case law applicable to his motion to suppress.

### C. Ground Three—Multiple Claims of Ineffectiveness

In support of this ground for habeas relief, Claytor asserts a number of ways that his counsel was ineffective. The court finds that none are cognizable under Strickland and other

---

[11] Claytor relies most heavily upon United States v. Neely, 345 F.3d 366 (5th Cir. 2003). There, appellant Neely had been convicted on multiple charges stemming from a bank robbery. The Fifth Circuit remanded for a new trial, finding an illegal seizure when a hospital treating Neely for a gunshot wound turned over his blood-stained clothing to the police upon request. The clothing was analyzed by a lab, which "revealed tear gas and red dye consistent with substances deployed in a dye pack" placed by bank tellers in the stolen bags of money. Id. at 368. Similarly, in Jones v. State of Florida, the items seized by law enforcement were the appellant Jones's clothing, and lottery tickets and cash previously inventoried by hospital staff. 648 So. 2d 669, 672 (Fla. 1994). Soil and pollen samples from that clothing was similar to samples taken from the location where the murder victim was discovered, and there was testimony linking the lottery tickets to the liquor store where Jones was seen meeting the victim. Id. See also Morris v. Commonwealth of Virginia., 208 Va. 331, 333-34, 157 S.E.2d 191, 193-94 (1967) (Fourth Amendment violation found for a warrantless seizure of a murder suspect's clothing from a hospital, where an "F.B.I. agent testified about the powder marks" found on the suspect's pants).

[12] Claytor also argues that Candace Carroll's—the hospital's director of emergency services and forensic nurse examiner—testimony was "incompetent" (Opp. Br. at 5), because she testified that it was the hospital's policy to turn over clothes to the police when nurses believe that criminal activity may have occurred. (See Jun. 7, 2005 Mot. to Sup. Tr. at 19-21). Here, the petitioner confuses the factual question of what is the hospital's policy (to which Carroll certainly gave competent testimony), and the legal question of whether Claytor's constitutional rights were violated (or more specifically, if counsel had argued the cases Claytor provides whether there is a reasonable probability that the motion to suppress would have been granted). As explained supra, the court finds Claytor's legal arguments unavailing.

9

governing case law, evaluating each claim in turn.[13]

### 1. Challenge of Prosecution Witnesses at Trial

Claytor claims that his counsel "failed to investigate or present available, material, exculpatory evidence and testimony at trial." (§ 2255 Mot. at 18). He submits that a proper investigation of both Preston's and Kenya's grand jury testimony would have produced "real evidence [such as] physical objects, 911 calls, police reports, investigation report of the shooting, DEA report, ... [and] medical records" that would have proved the harmful "testimony [was] false" and "destroyed [these witnesses'] credibility." (Opp. Br. at 2-3). As detailed below, the court finds that Claytor fails to establish his counsel's ineffectiveness with respect to any claimed impeachment evidence.[14]

---

[13]    Claytor argues that Strickland's prejudice prong may be satisfied by the "cumulative impact or multiple deficiencies or errors of counsel." (§ 2255 Mot. at 53 (citing Matthews v. Abramajtys, 319 F.3d 780 (6th Cir. 2003)). However, in the Fourth Circuit, "ineffective assistance of counsel claims . . . must be reviewed individually, rather than collectively." Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998). See also Winston v. Kelly, No. 7:07cv00364, 2008 U.S. Dist. LEXIS 42565, at *88-89 (W.D. Va. May 30, 2008) (relying on Fisher to "den[y] relief on [petitioner's] cumulative ineffective assistance claim"); Willis v. Johnson, No. 7:07cv00241, 2007 U.S. Dist. LEXIS 85279, at *19-20 (W.D. Va. Nov. 19, 2007) (same); Potts v. Hinkle, No. 7:06cv00524, 2007 U.S. Dist. LEXIS 39578, at *16-17 (W.D. Va. May 31, 2007) (same). The court will therefore individually review the ineffective assistance of counsel arguments raised in Claytor's third ground for relief, with the exception of the motion to dismiss the indictment and motion to suppress evidence claims, which were evaluated supra.

[14]    The court desires to make some general observations about both Preston's and Kenya's testimony. These witnesses' trial testimony diverged from that before the grand jury in some ways that were favorable to Claytor. This fact was not hidden from the jury. In closing argument, the government stressed that this was "far off from a perfect case" because of Preston's and Kenya's conflicting testimony, and that the jury would "have to fight [its] way through the trash to get to the truth." (Jun. 8, 2005 Trial Tr. at 27). As is its sole province, the jury evaluated Preston's and Kenya's credibility, including any motivations to testify falsely at trial and/or before the grand jury. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). For example, Preston testified that Claytor suggested that she testify falsely at trial because she would be subject to much less time for perjury than he was for his charged crimes. (See Jun. 7, 2005 Trial Tr. at 81-83). The jury weighed the inconsistencies in these witnesses' testimony, along with all the other evidence. Ultimately, and as stated by the Fourth Circuit, "the evidence presented to the jury was sufficient to prove that Claytor possessed with intent to

Case 7:05-cr-00007-JCT-RSB   Document 121   Filed 02/12/09   Page 10 of 22   Pageid#: 635

### a. Kenya's Testimony Regarding the Drugs

At trial, Kenya testified that she went to the hospital the day after Claytor was shot, asked him if the drugs found in the pants by the police were his, and received "no response at all, because he was just heavily medicated." (Jun. 7, 2005 Trial Tr. at 179). The next day Kenya returned to the hospital and "asked him . . . the same question. Did you have drugs in your pocket? Mind you, he's still on medication. He looked over and he kind [of] nodded like, yeah. That was it. He was out." (Id.).

Claytor argues that his attorney should have introduced medical records, which "would have proved in no way could have I [said] that those drugs were mine the day after I got shot." (Opp. Br. at 4).[15] The court will construe Claytor's pleadings to be referring to the second day after he was shot, the day Kenya testified that Claytor nodded in affirmance that the drugs were his. However, the court finds that Claytor cannot establish <u>Strickland</u> prejudice for counsel's failure to submit any medical records as to his condition on that day.

---

distribute cocaine; possessed a firearm in furtherance of a drug trafficking crime; and possessed a firearm as a convicted felon." (Dkt. No. 97 at 4).

[15]    Claytor also takes issue with counsel's failure to introduce at trial a DEA Report of Investigation (hereinafter "DEA Report") dated October 7, 2004, based on an interview with Kenya on October 4, 2004. (See Oct. 7, 2004 DEA Report., Ex. 2 to Dkt. No. 119). Claytor contends that the DEA Report would have shown "a [proof] of collusion and could have convinced the jury that when [Kenya] told them that she lied in front of the grand jury because she was hurt because [Claytor didn't] come home to her." (Opp. Br. at 3-4). Claytor does not specify what part of the DEA Report he contends could have accomplished this aim. Though Kenya appears to have detailed her knowledge of Claytor's drug trafficking and use to the DEA agents, nothing in the DEA Report could help Claytor establish any collusion or a motivation for Kenya to be untruthful before the grand jury months later. In addition, Kenya did testify at trial that she was upset at Claytor for not coming home with her from the hospital, and claimed that was the reason she had lied to the grand jury about hearing Claytor ask Preston for his gun back the day he was released. (Jun. 7, 2005 Trial Tr. at 180-85). For these reasons, the court finds no <u>Strickland</u> deficient performance or prejudice for counsel's failure to introduce the DEA Report.

11

First, Kenya's own testimony revealed Claytor's general medical condition. On direct, she said that "[h]e was out" and only "kind [of] nodded." On cross-examination, Kenya further explained that Claytor was in the ICU at the time. (Jun. 7, 2005 Trial Tr. at 192-94). Thus, the jury was aware that Claytor's physical and mental condition was limited. Second, the significant evidence supporting Claytor's drug trafficking conviction was the 28 grams of cocaine and $1,800 found in the pants he wore to the hospital, coupled with digital scales found at Preston's apartment which Preston testified were not hers. (Jun. 7, 2005 Trial Tr. at 79). Without this piece of Kenya's testimony then, there is not a reasonable probability that the jury would not have found Claytor guilty of Count One.

For these reasons, the court holds that Claytor establish <u>Strickland</u> prejudice for his counsel's failure to introduce medical evidence to rebut Kenya's testimony that Claytor affirmed the drugs found in the pants were his.

### b. Ownership of the Gun

The night of the shooting, Preston was interviewed by a DEA agent. (<u>See</u> Jun. 27, 2004 DEA Tr., Ex. 3 to Dkt. No. 119). In this interview, Preston said that she owned the gun that was used to accidentally shoot Claytor. (<u>Id.</u> at 3). Claytor contends that his attorney should have introduced a transcript of this interview to show that Preston was being truthful at trial when she claimed the gun was hers, and mistaken when she testified before the grand jury that the gun was purchased for Claytor's benefit. (Opp. Br. at 3, 12-13). In addition, Claytor contends that a proper investigation by counsel would have revealed a 911 tape where Preston told an operator while en route to the hospital that she had shot Claytor with her gun. (<u>Id.</u> at 3).

There is certainly logical force to the argument that Preston's statements the day of the shooting would have been carefully evaluated by a jury seeking to determine the truth from the

Case 7:05-cr-00007-JCT-RSB   Document 121   Filed 02/12/09   Page 12 of 22   Pageid#: 637

tangle of Preston's subsequent inconsistent statements. However, the court holds Claytor cannot establish Strickland prejudice for the failure to introduce either the DEA transcript or the 911 call.

Claytor was not charged with "owning" a firearm, but merely "possessing" it—either in furtherance of a drug trafficking crime (Count Two) or as a felon (Count Three). Thus, even assuming that Claytor did not directly own the gun in question, given the other significant trial evidence, there is not a reasonable probability that the jury would not have found him guilty of Counts Two or Three if the DEA transcript and/or the 911 call were admitted.

Moreover, viewed in its entirety, the DEA transcript would actually have been harmful to Claytor's legal interests. There, Preston detailed that Claytor himself possessed the gun after coming to her apartment that day. (See Jun. 27, 2004 DEA Tr. at 2-3 ("[a]t that point [Claytor] went and got . . . the weapon which was concealed . . . . he had the gun on him"; 4 ("at that point [Claytor] had had the gun on for [a] little while . . . I don't know[,] he was kinda like in and out of the apartment") 9 (Claytor "left [the gun] out when he went to answer the door"). Before the grand jury, Preston testified similarly; it was only at trial that Preston claimed that she could not recall whether Claytor physically possessed the gun or not.[16]

At trial, the United States argued that Preston called Claytor instead of the police after the attempted break-in because Claytor was a drug-dealer, and therefore the police could not protect Claytor's interests. (See, e.g., Jun. 8, 2005 Trial Tr. at 28, 33). Introducing the DEA transcript would have bolstered the government's case for both Counts Two and Three. For these reasons, the court also holds that Claytor cannot satisfy Strickland's performance prong with respect to his counsel's failure to introduce Preston's DEA statement.

---

[16] However, when pressed by the United States, Preston did generally affirm that her grand jury testimony had been truthful. (See Jun. 7, 2005 Trial Tr. at 77, 105-06).

### c. Shooting at Kenya's Aunt's House

Claytor contends that his counsel should have submitted a 911 call and police report to dispute Kenya's grand jury testimony that after an argument with Kenya, Claytor shot a gun into the air while driving past her aunt's house while Kenya was present. (Opp. Br. at 3). At trial, Kenya testified that while she initially thought it was Claytor who had fired a gun, she later found out that it was in fact her brother. (Jun. 7, 2005 Trial Tr. at 197-202). Kenya claimed that any perceived discrepancy in her grand jury versus trial testimony was because she was not afforded an opportunity to tell the "full story" until trial. (Id. at 201-02).

The court holds that Claytor cannot establish Strickland prejudice for counsel's failure to introduce this evidence. First, Kenya gave a full explanation of the event at trial, testifying that Claytor had not fired a gun that day. Second, the incident in question was clearly domestic in nature, and in no way implicated Claytor's drug trafficking. The court has already found that no claimed impeachment evidence pertaining to Count Two (possession of a firearm in furtherance of a drug trafficking crime) could have prejudiced Claytor. If Claytor was guilty Count Two, then a fortiori he was also guilty Count Three (possession of firearm by a felon).[17]

### d. Striking Kenya with a Gun

Claytor also argues for counsel's ineffectiveness regarding Kenya's statement that he "hit her in the back of her head with a gun and she had to get stitches." (Opp. Br. at 4). Claytor claims that his counsel should have revealed the lack of any medical records or a scar to support this story. The court has reviewed Kenya's testimony and finds that while Kenya testified to this incident before the grand jury, it was never raised at trial. Therefore, the court holds that Claytor

---

[17]     It is undisputed that Claytor was a convicted felon prior to his June 8, 2005 convictions.

14

cannot establish either <u>Strickland</u> performance or prejudice as to this claim.[18]

## 2. Advice Regarding Whether to Testify at Trial

In his § 2255 motion, Petitioner contends that his "[c]ounsel unprofessionally failed to advise Mr. Claytor as to all facts and law relevant to his decision whether to testify at trial. More specifically, counsel failed to advise Mr. Claytor that he had a right to testify at trial <u>and</u> that the determination as to whether to testify was ultimately Mr. Claytor's to make – not the attorney's." (§ 2255 Mot. at 18 (emphasis in original)). In his opposition brief, Claytor states that he "was told by [his counsel] that I <u>should</u> not testify because of my prior history [sic] that it would look bad to the jury." (Opp Br. at 8 (emphasis added)). He argues that he "would have testified [o]n my behalf to defend myself and to contradict the lies of Ms. [P]reston and Kenya Claytor had I known that counsel did not investigate their grand jury testimony and had no other evidence to present as my defense." (<u>Id.</u>).

The court holds that Claytor cannot establish this claim for ineffective assistance because his counsel's performance was not deficient. Through his pleadings, Claytor acknowledges that he discussed whether he "should" testify or not with his counsel.[19] Based on his counsel's advice, Claytor then did not to testify, a decision he now regrets. However, such advice certainly falls "within the wide range of reasonable professional assistance." <u>Strickland,</u> 466 U.S. at 689. <u>See also Carter v. Lee,</u> 283 F.3d 240, 249 (4th Cir. 2002). ("[T]he advice provided by a criminal

---

[18]     Moreover, like the shooting at Kenya's aunt's house, this incident too was clearly domestic in nature. Claytor cannot establish any prejudice because a conviction for Count Two would also extend to Count Three, without any consideration by the jury of this separate incident.

[19]     Relatedly, Claytor's pleadings also establish that he knew "that a right to testify exist[ed]" at the time of his trial. <u>United States v. McMeans,</u> 927 F.2d 162, 163 (4th Cir. 1991). "Thus, [Claytor's] contention that [counsel was] ineffective in failing to inform him of his right to testify must fail." <u>Daniels v. Lee,</u> 316 F.3d 477, 491 (4th Cir. 2003).

defense lawyer on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" (citations omitted)).

### 3. Jury Instructions

Claytor claims that his counsel "failed to timely request appropriate jury instructions and to timely object to insufficient instructions." (§ 2255 Mot. at 18). However, Claytor does not explain what jury instructions he contends counsel should have requested or objected to, nor any reason why the given jury charge was improper, unconstitutional, or prejudicial to Claytor. For these reasons, this claim for habeas relief must fail. See, e.g., Pruett v. Thompson, 996 F.2d 1560, 1577 (4th Cir. 1993) ("[I]t is not ineffective assistance of counsel to fail to offer additional or different instructions if the ones given by the trial court are proper."); Peterson v. Murray, 904 F.2d 882, 888 (4th Cir. 1990) ("Because the instruction was constitutional, [petitioner] was not prejudiced by his counsel's failure to object to it.").

### 4. Closing Argument

Claytor claims that his counsel "failed to object to improper argument by the prosecution and/or ask for curative instructions for the improper argument." (§ 2255 Mot. at 18). However, Claytor provides no further explanation regarding this claim, and therefore fails to carry his burden as to either Strickland's prejudice or performance prongs.

### 5. Unlawful Admission of Evidence

Claytor claims that his counsel "failed to . . . object to the unlawful admission of evidence by the prosecution." (§ 2255 Mot. at 18). However, Claytor provides no further articulation of this claim,[20] and therefore fails to carry his burden as to either Strickland's prejudice or performance prongs.

---

[20]    If Claytor meant to refer to the cocaine and money found in the pants at the hospital, his counsel's performance was clearly not deficient as a pre-trial motion to suppress was filed.

16

### 6. Conflict of Interest

Petitioner alleges that his "counsel labored under an actual conflict of interest which adversely affected his performance during pretrial, trial, sentencing, and direct appeal," and "owed a 'duty' other than to Mr. Claytor." (§ 2255 Mot. at 18-19). Evaluation of such a claim of ineffective assistance "is subjected to the specific standard spelled out in Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), instead of that articulated in Strickland." United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007). Under Sullivan, "more than a mere possibility of a conflict" is required. Id. (quoting United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991)). "The petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" Id. (quoting Sullivan, 446 U.S. at 348).

Here, Claytor offers no clear elucidation of what the conflict of interest in this case may have been. Liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), Claytor may be referring to the fact that his counsel "personally met with and talked on the telephone to both Kenya Claytor and Monique Preston in advance of trial." (Affidavit of Counsel, ¶ 9, Ex. 1 to Dkt. No. 117). In his opposition brief, Claytor states that "[t]alking and meeting with [Preston and Kenya] only makes [Claytor] believe [counsel] was working with the prosecution." (Opp. Br. at 2-3). But meeting with government witnesses does not in any way support Claytor's claim that his counsel had an "actual conflict of interest." To the contrary, understanding "the discrepancies in the testimony that [the witnesses] intended to give and their grand jury statements" was vital in preparing a vigorous defense on Claytor's behalf. (Affidavit of Counsel, ¶ 9). Thus, the court holds that this claim fails because Claytor has not established an "actual

Case 7:05-cr-00007-JCT-RSB   Document 121   Filed 02/12/09   Page 17 of 22   Pageid#: 642

conflict of interest," or any related "adverse effect" of a conflict upon his counsel's performance.

## 7. Appeal Issues

Petitioner contends that his counsel was ineffective because he "failed to investigate or present the strongest issues available to Mr. Claytor for his direct appeal and failed to preserve viable issues for collateral review." (§ 2255 Mot. at 18). Though not directly stated, the court will assume that Claytor means that in addition to the issues presented in his appeal to the Fourth Circuit, his counsel was ineffective for not arguing the other issues raised now in his § 2255 petition. Under the applicable law, this claim must fail because Claytor cannot satisfy Strickland's performance or prejudice prongs.

Counsel raised four issues in Claytor's direct appeal: (1) that the drugs and money found in his pants should have been suppressed; (2) the claimed Batson violation; (3) that this court erred in denying his motion for judgment of acquittal and first motion for a new trial (challenging Count Two for insufficient evidence); and (4) that this court erred in denying his second motion for a new trial (challenging each of Claytor's convictions in light of Preston's recantation of prior testimony). The court finds that these issues represent the substantial issues that Claytor raises on this habeas petition, albeit largely channeled through his Sixth Amendment ineffective assistance of counsel claims.[21] Further, Claytor experiences no prejudice on collateral attack as this court addresses Claytor's other free-standing constitutional arguments. (See infra Parts III(D) & (E)). Therefore, the decision of counsel to not include these claims in the direct appeal does not constitute deficient performance or prejudice under Strickland.

---

[21]    Part of counsel's value is to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). The Constitution does not require counsel to "raise every colorable claim on appeal. Rather, counsel has some latitude to 'decide what issues are to be pressed' on appeal." Cole v. Branker, No. 07-20, 2008 U.S. App. LEXIS 22905, at *24 (4th Cir. Nov. 3, 2008) (quoting Jones, 463 U.S. at 751, 754) (internal citation omitted).

18

## D. Ground Four—Denial of Due Process

In his § 2255 motion, Claytor claims that he was denied due process in the pretrial process due to false testimony, leading questions, and improper characterization of witness testimony to the grand jury. (§ 2255 Mot. at 7). He also more generally contends that his convictions and sentence "constitute[] a fundamental defect, a complete miscarriage of justice, and [are] tantamount to a violation of the Due Process Clause of the Fifth Amendment." (Id. at 19). In his opposition to the United States' motion for summary judgment, Claytor then claims that (1) a witness was asked a prejudicial question at his sentencing, and (2) the government "with[h]eld exculpatory evidence," namely the pants he wore to the hospital and a written hospital policy about turning over evidence to law enforcement. (Opp. Br. at 11-14).[22]

Though packaged as an ineffective assistance of counsel claim, the court previously addressed Claytor's allegations of error during the grand jury proceedings. For the same reasons expressed supra at Part III(A), the court holds that Claytor cannot establish any due process violation at the grand jury. As for Claytor's claim that his convictions and sentence violate the Fifth Amendment, Claytor only specifically alleges the two types of errors enumerated above, each which fail on the merits.

First, the court finds no due process violation at sentencing when the government asked Claytor's character witness if he was "aware that . . . a woman . . . maintained that she had been sexually assaulted and abducted" by Claytor, when discussing his two prior convictions for

---

[22]     The court notes that because Claytor could have raised these due process claims on direct appeal, they are procedurally defaulted from collateral review under § 2255. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)). However, because procedural default is generally an affirmative defense, Yeatts v. Angelone, 166 F.3d 255, 260-61 (4th Cir. 1999), which the government did not raise, the court declines to grant summary judgment on this ground and will instead address Claytor's claims on their merits.

19

assault and battery. (Sep. 26, 2005 Sent. Tr. at 52-53). Claytor's PreSentence Investigation Report shows that the government accurately described the circumstances of this conviction, (Dkt. No. 72, ¶ 39), and the question in no way violated Claytor's due process rights.

Second, Claytor fails to establish any violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) for the prosecution's failure to turn over exculpatory evidence. For a successful <u>Brady</u> claim, Claytor must prove: "(1) that the undisclosed evidence was favorable to him, either because it was exculpatory or had impeaching value; (2) that the [government] had the materials and failed to disclose them, 'either willfully or inadvertently'; and (3) that the evidence was material to the defense, i.e., 'prejudice must have ensued.'" <u>Moseley v. Branker</u>, 545 F.3d 265, 271 (4th Cir. 2008) (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 282 (1999)).

The court holds that Claytor cannot establish either of the first two requirements with respect to the missing pants or the written hospital policy. Claytor merely speculates that the pants' characteristics would have supported his claim that they were not his. (Opp. Br. at 12). Further, there has been no showing that the government ever took custody of the pants. To the contrary, testimony at the suppression hearing revealed that pants were never inventoried by either the police or the hospital. (Jun. 7, 2005 Supp. Hr. at 14, 23-25). Therefore, Claytor cannot prove that "the [government] had the [pants] and failed to disclose them." Similarly, Claytor has made no showing that the government failed to disclose a written policy that would have been favorable to him. Instead, the hospital's director of emergency services and forensic nurse examiner Candace Carroll provided detailed testimony regarding the hospital policy. (<u>Id.</u> at 19-20). That the government did not also introduce a written policy into evidence does not support Claytor's speculative contention that the government had, and failed to turn over, a written policy inconsistent with Carroll's testimony.

20

## E. Ground Five—Other Constitutional Violations

Finally, Claytor asserts that his conviction and sentence violate the First, Fourth, Sixth, and Eight Amendments. (§ 2255 Mot. at 8). However, Claytor's bare and conclusory claims must fail because he provides no articulation of these arguments whatsoever (beyond the Fourth and Sixth Amendment issues previously addressed by the court).

## IV. Conclusion

For the stated reasons, the United States' motion for summary judgment (Dkt. No. 117) is **GRANTED**, and the Claytor's 28 U.S.C. § 2255 motion (Dkt. No. 108) is **DENIED**. An appropriate order shall issue this day.

Claytor is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C § 2253(c)(2). This court finds that Claytor has failed to demonstrate such a showing, and thus declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If Claytor intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 60 days of the date of entry of the final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to the petitioner and counsel of record for the respondent.

**ENTER:** This _12th_ day of February, 2009

Senior United States District Judge

22